**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| KIMBERLY J. SOUTHERLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-cv-01177-TWP-MJD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Kimberly J. Southerland ("Ms. Southerland") requests judicial review of the final decision of the Defendant, Carolyn Colvin, Commissioner of the Social Security Administration ("Commissioner"), after the Commissioner denied her application for Social Security Disability Insurance Benefits ("DIB") under Subchapter II of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d) (2012). For the reasons stated below, the Court **REMANDS** the Commissioner's final decision.

**I. BACKGROUND**

**A.   Procedural History**

On September 25, 2009, Ms. Southerland filed an application for DIB, alleging a disability onset date of June 5, 2009. (Filing No. 8-5 at 2-4.) On November 16, 2009, Ms. Southerland's application was denied initially; and on February 24, 2010, her application was denied upon reconsideration. (Filing No. 8-4 at 2, 7.) On March 16, 2010, Ms. Southerland filed a request for a hearing before an Administrative Law Judge. (*Id*. at 12.) On April 25, 2011, a video hearing was held before ALJ John Kraybill. (Filing No. 8-2 at 36-84.) On May 12, 2011, ALJ Kraybill denied Ms. Southerland's application for DIB. (Filing No. 8-3 at 4-13.)

Ms. Southerland requested review of the ALJ's decision by the Appeals Council and on September 28, 2012, the Appeals Council remanded the claim for a new hearing and decision. (Filing No. 8-3 at 18-21.) A remand hearing was held before ALJ Monica LaPolt ("the ALJ") and on March 28, 2013, the ALJ found Ms. Southerland was not entitled to DIB. (Filing No. 8-2 at 16-29). Ms. Southerland also requested review of this ALJ's decision. *Id*. at 16. However, on June 6, 2014, the Appeals Council denied Ms. Southerland's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *Id*. at 1-6.

On July 15, 2014, Ms. Southerland filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.** **Medical Evidence**

At the time of her alleged disability onset date, Ms. Southerland was 47 years old; and she was 51 years old at the time of the ALJ's decision. Ms. Southerland graduated from high school, has past work experience as an assistant manager at a fast food restaurant, a customer service clerk, and a plumbing dispatcher. (Filing No. 8-6 at 8.)

At the time of her application, Ms. Southerland alleged that she suffered from the effects of spondylosis of the cervical spine and degeneration of the cervical intervertebral disc. (Filing No. 8-5 at 2-4.) Ms. Southerland has dealt with neck and left shoulder pain for many years. Since September 2007, Robert Silbert, M.D., ("Dr. Silbert"), has treated her for severe neck and left shoulder pain. (Filing No. 8-7 at 41.)

On March 24, 2009, Ms. Southerland reported ongoing pain in her neck and left shoulder to Dr. Silbert. *Id*. at 29. At that time, she had received two disc injections and was taking several

prescription medications to manage her physical pain. *Id*. at 31. Dr. Silbert noted that "range of motion of the neck is reduced by 10%," and that "there is no focal deficit in motor strength." *Id*.

On July 14, 2009, Ms. Southerland's complaints of neck and left shoulder pain remained the same. *Id*. at 26. During this visit, Dr. Silbert noted that Ms. Southerland was taking six Vicoden per day, and that "[p]ain is relieved by analgesics, muscle relaxants . . . [and] by heat." *Id*.

On October 22, 2009, at a follow-up appointment, Dr. Silbert noted that Ms. Southerland had continued neck and shoulder pain and thoughts of depression. *Id*. at 99. During this visit, Dr. Silbert opined that, "[t]he medications reduce the amount of pain, allow increased activity and functions, allow the patient to work, increased socialization." *Id*.

On November 9, 2009, Ms. Southerland consulted with Lama Noureddine, M.D. ("Dr. Noureddine") regarding neck and left shoulder pain. ([Filing No. 8-7 at 86](#).) Dr. Noureddine's examination of Ms. Southerland revealed that Ms. Southerland had difficulty with lateral extension of the cervical spine and tenderness over the cervical and mid-thoracic spine. *Id*. at 88. Dr. Noureddine diagnosed Ms. Southerland with degenerative joint disease of the cervical spine, asthma, depression, anxiety, and tobacco abuse. *Id.* However, Dr. Noureddine did not provide an opinion regarding Ms. Southerland's functional capacity in a work environment. *Id.*

On November 16, 2009, state agency physician A. Dobson, M.D. ("Dr. Dobson") reviewed the evidence on record and determined that Ms. Southerland could perform medium work, despite her limitations. *Id.* at 90-97. Specifically, Dr. Dobson found that Ms. Southerland could lift and/or carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk about six hours in an 8-hour workday, could sit about six hours in an 8-hour workday, and could push and/or pull subject to her lifting and carrying restrictions. *Id.* at 91. On February 24, 2010, a second state

agency physician, J. Sands, M.D., reviewed the evidence on record and affirmed Dr. Dobson's determination. *Id*. at 112.

On February 11, 2010, Ms. Southerland continued to report neck and shoulder pain to Dr. Silbert. *Id*. at 104. A medical examination revealed reduced motion in Ms. Southerland's neck by 10%, tenderness of the muscles attaching the scapula, and forward flexion to 50 degrees. *Id.* at 105. Dr. Silbert diagnosed degeneration of the cervical spine, headaches, and degeneration of the thoracic spine. *Id*. at 119.

Dr. Silbert offered four opinions that indicated Ms. Southerland could not work. On February 2, 2010, he wrote a letter stating that Ms. Southerland was unable to work due to neck and shoulder pain and use of medication. *Id.* at 103. In this letter, he opined that "[h]er pain is such that, even though she is not working, she requires narcotic pain medication. She was at that time doing office work. Because of this, I do feel she will be able to return to competitive employment, at least for one year." *Id*.

On March 30, 2010, Dr. Silbert completed a Multiple Impairment Questionnaire and indicated that Ms. Southerland was incapable of lifting any weight, could not perform any fine or gross manipulations, and was essentially precluded from using her left arm. *Id*. at 122-23. This questionnaire also noted that Ms. Southerland could sit and walk/stand for up to four hours in an eight hour day. *Id*. at 121.

On March 21, 2011, Dr. Silbert completed a Cervical Spine Impairment Questionnaire and indicated that Ms. Southerland could lift and carry up to five pounds, had minimal limitations performing fine and gross manipulations and was essentially precluded from using both of her arms for reaching. (Filing No. 8-8 at 6.) In this questionnaire, Dr. Silbert noted that Ms. Southerland could only sit and walk/stand for 1-2 hours each in an eight hour day. *Id*. Further,

4

Dr. Silbert noted that Ms. Southerland could lift 5-10 lbs. occasionally and carry up to 5 lbs. occasionally. *Id*.

On December 13, 2012, Dr. Silbert completed another Multiple Impairment Questionnaire, in which he found that Ms. Southerland was incapable of lifting any weight, had significant limitations with fine and gross manipulations, and was essentially precluded from using her left arm. *Id*. at 35-37. Dr. Silbert also noted that Ms. Southerland could sit and stand/walk for four hours each in an eight hour day. *Id.*

**C.     Ms. Southerland's Testimony**

At the administrative hearing, Ms. Southerland testified that she was laid off from her job in June 2009 because she was unproductive as a result of her pain. (Filing No. 8-2 at 41.) While describing the pain in her neck and left shoulder, Ms. Southerland estimated that she can walk for 10 minutes at a time, stand for 15 minutes at a time, and remain seated for a brief amount of time. *Id*. at 52-53. She also noted that she has difficulty rotating her head, cannot use her left arm for more than 5 to 10 minutes at a time, and has frequent headaches. *Id*. at 50, 53-56.

Ms. Southerland testified that she is able to shower herself and complete "very light" chores at home if she is having a good day. *Id*. at 46. She visits her sister or mother once or twice a week, can drive herself, and goes shopping with help from her husband. *Id*. at 46-48. Ms. Southerland testified that she tried to look for other work, but was advised by Dr. Silbert not to work. *Id*. at 42.

During the first administrative hearing, Ms. Southerland was working part-time for about eight hours a week. *Id*. at 90-91. At the time of Ms. Southerland's second administrative hearing, she was receiving unemployment benefits which were scheduled to stop in two to three weeks.

**D.     Vocational Expert's Testimony**

5

During the administrative hearing a vocational expert ("VE") testified that an individual of Ms. Southerland's age, education, and work history who was limited to light work with frequent climbing stairs and ramps, occasional climbing ladders, ropes, or scaffolds, frequent balancing, stooping, kneeling, crouching, and crawling, and no repetitive overhead reaching, could perform Ms. Southerland's past work as a customer service representative and dispatcher. *Id*. at 113-117. However, the VE also testified that an individual who could not sit, stand, and walk a total of eight hours a day would be unable to perform gainful employment. *Id*. at 117.

**E.    The ALJ's Decision**

The ALJ first determined that Ms. Southerland met the insured status requirement through December 31, 2014. ([Filing No. 8-2 at 22](#).) The ALJ then began the five-step disability analysis. At step one, the ALJ found that Ms. Southerland had not engaged in substantial gainful activity since June 5, 2009, the alleged onset date of disability. *Id*. At step two, the ALJ found that Ms. Southerland had the severe impairment of degenerative disc disease of the cervical spine. *Id*. The ALJ found that Ms. Southerland's mental impairments of depression and anxiety were non-severe because they did not cause more than minimal limitation in Ms. Southerland's ability to perform work activities. *Id.* at 23. At step three, the ALJ concluded that Ms. Southerland did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 24.

The ALJ then determined that Ms. Southerland had the residual functional capacity ("RFC") to perform light work, to frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, and scaffolds; with the additional limitations that she cannot perform repetitive overhead reaching bilaterally. *Id*.

6

At step four, the ALJ determined that Ms. Southerland was capable of performing past relevant work as a customer service clerk and plumbing dispatcher. *Id*. at 27. The ALJ relied on testimony from the VE when finding Ms. Southerland's past relevant work did not exceed her RFC. *Id*. at 27-28. Alternatively, at step five, the ALJ also determined that other jobs exist in significant numbers within the national economy that Ms. Southerland could perform such as night office cleaner, cashier, information clerk, and circuit board assembler. *Id*. at 28-29. Accordingly, the ALJ found that Ms. Southerland was not disabled. *Id*. at 30.

## II. LEGAL STANDARD

### A. Disability Determination

Under the Social Security Act, a claimant is entitled to DIB if she establishes she has a disability. 42 U.S.C. §§ 423(a)(1)(E), 1382 (2012). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A) (2012). To justify a finding of disability, a claimant must demonstrate that his physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, if the claimant

does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. The listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. For each listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that listing. 20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a listing, then the ALJ assesses the claimant's RFC for use at steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the ALJ determines whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012). The claimant is not disabled if she can

perform any other work in the relevant economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G) (2012). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

B.     Review of the Commissioner's Final Decision

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Thereafter, in its review, the District Court will affirm the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2012); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). *See also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (Substantial evidence must be "more than a scintilla but may be less than a preponderance.").

In this substantial-evidence determination, the court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of the claimant, the court must affirm the decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Ultimately, the sufficiency of the ALJ's articulation aids the court in its review of whether the Commissioner's final decision was supported by substantial evidence. *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do."). While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion. *Terry*, 580 F.3d at 475; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Indeed, to affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. DISCUSSION

Ms. Southerland raises two arguments in her request for judicial review. First, she contends that the ALJ failed to adequately consider the medical opinions of her treating physiatrist, Dr. Silbert. Second, Ms. Southerland argues that the ALJ improperly considered her credibility.

**A.** **The ALJ inadequately explained her reasons for discounting the medical opinion of Ms. Southerland's treating physiatrist, Dr. Silbert.**

Ms. Southerland argues that the ALJ failed to give controlling weight to the opinions of her treating physician, Dr. Silbert. This Court is persuaded that the ALJ failed to adequately

articulate the reasons for discounting Dr. Silbert's opinions and considers remand to be appropriate.

A treating physician's opinion regarding the nature and severity of a medical condition is ordinarily entitled to controlling weight if the opinion is well supported by the medical findings and is consistent with substantial evidence in the record. *See Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). More weight is generally afforded a treating physician's opinion because he is more familiar with the claimant's conditions and circumstances. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 416.927(c)(2).

However, while the treating physician's opinion is important, it is not the final word on a claimant's disability. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); 20 C.F.R. § 404.1527(d)(1). Accordingly, if a treating physician's medical opinion is internally inconsistent or inconsistent with other evidence in the record, an ALJ is entitled to give the opinion lesser weight. *Schmidt*, 496 F.3d at 842. Indeed, when evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's opinion becomes "just one more piece of evidence for the ALJ to weigh." *Hofslien*, 439 F.3d at 377.

An ALJ's decision to give lesser weight to a treating physician's opinion is afforded deference, so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2011); *Copeland v. Astrue*, 3:09-CV-431-JD, 776 F. Supp. 2d 828, 836 (N.D. Ind. Mar.1, 2011); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion."). The Seventh Circuit has characterized this deferential standard as "lax." *Berger*, 516 F.3d at 545; *Brown v. Astrue*, No. 1:10-CV-1035-SEB, 2011 WL 2693522, *3 (S.D. Ind. July 8, 2011).

Nevertheless, once an ALJ decides to give lesser weight to a treating physician's opinion, the ALJ still must determine what weight the physician's opinion is due under the applicable regulations. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2). Factors the ALJ should consider when determining the weight to give the treating physician's opinion include the length, nature, and extent of the treatment relationship, whether the physician supported his opinion with sufficient explanations, and whether the physician specializes in the medical conditions at issue. *See Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008); 20 C.F.R. 404.1527(c)(2).

Regarding the weight afforded to the opinion evidence in Ms. Southerland's case, the ALJ concluded as follows,

> As for the opinion evidence, the above stated residual functional capacity is consistent with, although somewhat more restrictive than, the opinions of the physicians and psychologists with DDS. Each of these opinions is consistent with and supportive of the residual functional capacity that I have assessed . . . Overall, Dr. Silbert's opinions are not supported by the medical evidence as a whole or by the specialists' assessments. Further, his own treatment notes do not offer the same assessment when seeing the claimant at regular office visits. In fact, Dr. Silbert's treatment notes indicate pain medications reduce pain and allow increased activity, socialization, and work.

([Filing No. 8-2 at 27](#)) (internal citations omitted.)

Ms. Southerland argues that the ALJ's decision did not adequately explain the reasons for not giving Dr. Silbert's four opinions controlling weight and did not explain, at all, what weight the ALJ actually gave those opinions. This Court is persuaded by this argument.

In an apparent effort to fill in the gaps and provide justification for the ALJ's decision, the Commissioner notes inconsistencies between Dr. Silbert's opinions and the opinions of the state agency physicians; inconsistencies between Dr. Silbert's opinions and Dr. Silbert's treatment notes; and inconsistencies between Dr. Silbert's four opinions themselves. ([Filing No. 15 at 7-](#)

10.)  At first blush, the Commissioner's arguments provide more factual detail that might justify the ALJ's reasoning and provide persuasive justification for the ALJ's opinion. *See Schmidt*, 496 F.3d at 842 (noting that an ALJ is entitled to give a treating physician's opinion lesser weight if the opinion is internally inconsistent or is inconsistent with other evidence in the record).

However, this Court notes that the ALJ did not offer the same explanations in her opinion. As such, the Commissioner's arguments are nothing more than impermissible *post hoc* rationalizations, which this Court is not permitted to consider. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("principles of administrative law require the ALJ to rationally articulate the grounds for her decision;" and the Court, therefore, "confines [its] review to the reasons supplied by the ALJ"); *Hendricks v. Astrue*, 1:08-CV-376-DFH, 2009 WL 648610, at *8 (S.D. Ind. March 11, 2009).

Instead, left alone, the ALJ's opinion merely states that there are inconsistencies in the opinion evidence without explaining them in sufficient detail. As a result, this Court cannot easily trace the ALJ's reasoning from the facts to her conclusions. While the ALJ is not required to evaluate every piece of evidence or testimony in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant evidence and must provide a "logical bridge" between the evidence and her conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

 This error of articulation requires remand to allow the ALJ to provide a more detailed explanation regarding the apparent inconsistencies in the opinion evidence.

**B.** **The ALJ adequately considered Ms. Southerland's credibility and sufficiently explained her credibility decision.**

Ms. Southerland also argues that the ALJ improperly discounted the credibility of her testimony in regards to her alleged limitations. This Court disagrees and concludes, instead, that the ALJ's credibility determination is well-supported and sufficiently articulated.

Because the ALJ is in the best position to observe witnesses, an ALJ's credibility determination will not be upset on appeal if it is supported by some record evidence and is not "patently wrong". *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995). *See also Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) ("[i]t is only when the ALJ's determination lacks any explanation or support that we will declare it 'patently wrong'"); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("[o]nly if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed.").

However, as a minimum, an ALJ must articulate specific reasons to support his credibility finding. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003); SSR 96-7p. In this regard, while an ALJ is not required to provide a complete written evaluation of every piece of testimony and evidence, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. *Id*.

In Ms. Southerland's case, the ALJ's gave multiple reasons for discounting her testimony. In particular, the ALJ opined, in relevant part, as follows:

> The claimant has described fairly limited daily activities. However, at certain points in the record, she admits to more abilities than she alleges. . . . These daily activities are not as limited as one would expect given the claimant's complaints of disabling symptoms and limitations. In addition, as mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate the claimant's daily activities have, at least at times, been somewhat greater than she has generally reported.
>
> I generally find the claimant's description of the location, duration, frequency, and intensity of her symptoms unpersuasive as they are generally unfounded elsewhere in the record. For example, she alleges debilitating neck and shoulder pain.

> However, her physical exams have shown only mild to moderate cervical tenderness and reduction in range of motion. . . .
>
> With regard to precipitating or aggravating factors, the claimant alleges difficulty with lifting and reaching due to pain. I have considered these matters in assessing her residual functional capacity and included appropriate restrictions.

([Filing No. 8-2 at 26](#).)

Ms. Southerland challenges each justification that the ALJ provides for discounting her credibility, arguing that each is an impermissible reason. Specifically, Ms. Southerland objects to the ALJ's reliance on her testimony regarding daily living activities and the effectiveness of her medications, and the ALJ's use of objective medical evidence to discount Ms. Southerland's testimony. However, these factors are precisely what the regulations require the ALJ to evaluate when assessing credibility.

The relevant regulations identify seven examples of the kinds of evidence the ALJ considers, in addition to objective medical evidence, when assessing the credibility of a claimant's statements. These include:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). *See also* SSR 96-7p. Further, while an ALJ may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, the ALJ may consider that as probative of the claimant's credibility. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); SSR 96-7p. Because the ALJ properly assessed the record evidence and adequately

15

explained her reasons for discounting Ms. Southerland's testimony, this Court cannot conclude that the ALJ's credibility determination was "patently wrong".

## IV.  CONCLUSION

The Court finds that the ALJ failed to sufficiently articulate her decision to give lesser weight to the treating physician's opinion. Therefore, the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

Date: 9/30/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana


DISTRIBUTION:

Dustin Allen Schock
BINDER and BINDER
fedcourt@binderlawfirm.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov